UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARMELO RIVERA<br><br>*Plaintiff*,<br><br>v.<br><br>JONATHAN TRINH,<br><br>*Defendant.* | No. 3:19-cv-01257 (MPS) |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Carmelo Rivera filed suit against defendant Officer Jonathan Trinh of the East Haven Police Department. Mr. Rivera alleges in his complaint that Officer Trinh violated his Fourth Amendment rights in violation of 42 U.S.C. §§ 1983 and 1988 by unlawfully entering and searching Mr. Rivera's residence and seizing and arresting Mr. Rivera without a warrant or probable cause. Mr. Rivera seeks compensatory damages, punitive damages, and attorneys' fees and costs. Officer Trinh filed a motion for summary judgment arguing that he is entitled to judgment on Mr. Rivera's § 1983 claim as a matter of law. For the reasons set forth below, Officer Trinh's motion for summary judgment is GRANTED.

I. **Factual Background**

The following facts, which are taken from the parties' Local Rule 56(a) statements and supporting exhibits, are undisputed unless otherwise indicated.

On the evening of September 23, 2017, Officer Trinh, a Patrol Officer with the Town of East Haven Police Department, responded to a breach of peace complaint at 611 Main Street, East Haven, CT. ECF No. 22-2 at ¶¶ 1, 5; ECF No. 23-1 at Section A, ¶¶ 1, 5. Upon arriving at 611 Main Street, Officer Trinh encountered two residents of that address—Pasquale Garguilo

1

and Tiffany Couture. ECF No. 22-2 at ¶ 6; ECF No. 23-1 at Section A, ¶ 6. Mr. Garguilo told Officer Trinh that before Officer Trinh arrived, Mr. Garguilo had been retrieving a backpack from the driveway of the neighboring property (607 Main Street), when Mr. Rivera pointed a pistol at him and fired "blanks." ECF No. 22-2 at ¶ 7; ECF No. 23-1 at Section A, ¶ 7. Ms. Couture told Officer Trinh that she had heard gunshots coming from the direction of 607 Main Street and observed Mr. Garguilo running from 607 Main Street, claiming someone had shot at him. ECF No. 22-2 at ¶ 8; ECF No. 23-2 at 2; ECF No. 23-1 at Section A, ¶ 8. Mr. Garguilo and Ms. Couture told Officer Trinh that Mr. Rivera lived on the first floor of 607 Main Street. ECF No. 22-2 at ¶ 9; ECF No. 23-1 at Section A, ¶ 9.

"Within minutes of receiving this information," after additional officers arrived to secure the back of 607 Main Street and to look for shell casings, Officer Trinh and another officer or officers went to the door of 607 Main Street. ECF No. 22-2 at ¶ 10; ECF No. 23-1 at Section A, ¶ 10. Mr. Rivera's wife, MaryAnn Rivera, opened the door for the officers, confirmed that Mr. Rivera was inside, and permitted the officers to enter. ECF No. 22-2 at ¶¶ 11-12; ECF No. 23-1 at Section A, ¶¶ 11-13.

The officers then confronted Mr. Rivera, informed him that he would be detained during the officers' investigation, and handcuffed him. ECF No. 22-2 at ¶¶ 14-15; ECF No. 23-1 at Section A, ¶¶ 14-15. While Officer Trinh contends that Mr. Rivera resisted being handcuffed, ECF No. 22-2 at ¶ 15, Mr. Rivera contends that he did not resist but rather fully cooperated with the police investigation, ECF No. 23-1 at Section A, ¶ 15 and Section B, ¶ 1-2, pointing to the absence of any mention of resistance in Officer Trinh's police report, ECF No. 23-2, as evidence that could lead a jury to conclude that he did not resist.

Mr. Rivera informed the officers that he had a gun permit and guns and that there was a gun in a dresser. He told them to open the dresser drawer, and Officer Trinh did so, retrieving a handgun and several rounds of ammunition, which he then secured in his patrol cruiser. ECF No. 22-2 at ¶¶ 16-19; ECF No. 23-1 at Section A, ¶¶ 16-19. Mr. Rivera denied discharging the firearm that evening, ECF No. 22-2 at ¶ 21; ECF No. 23-1 at Section A, ¶ 21, and Officer Trinh noted that the barrel of the firearm was cold, ECF No. 23-1 at Section B, ¶ 3.[1] Mr. Rivera stated that there were other firearms in the house but that they were locked in the attic. ECF No. 23-1 at Section B, ¶ 3; ECF No. 23-2 at 2.

Officers then removed Mr. Rivera from the residence and brought him outside to the front porch of 607 Main Street. ECF No. 22-2 at ¶ 22; ECF No. 23-1 at Section A, ¶ 22. After neighbors reported during a neighborhood canvass that they had heard a verbal dispute but no firearm discharges, and after officers located no shell casings on the property of 607 Main Street during their search, officers removed Mr. Rivera's handcuffs. Mr. Rivera was in handcuffs for less than half an hour. ECF No. 22-2 at ¶¶ 23-26; ECF No. 23-1 at Section A, ¶¶ 23-26.

Before departing the scene, Officer Trinh gave Mr. Garguilo a verbal warning for trespassing on Mr. Rivera's property and warned Mr. Rivera to avoid conflicts with his neighbors. ECF No. 22-2 at ¶¶ 27-28; ECF No. 23-1 at Section A, ¶¶ 27-28. Officer Trinh also returned Mr. Rivera's handgun and ammunition to a member of Mr. Rivera's family to return to Mr. Rivera. ECF No. 22-2 at ¶ 30; ECF No. 23-1 at Section A, ¶ 30. Mr. Rivera was not charged with committing any crimes. ECF No. 22-2 at ¶ 29; ECF No. 23-1 at Section A, ¶ 29.

## II. Legal Standard

---

[1] Officer Trinh does not include this detail in his 56(a)1 statement, but it is included in his police report describing the incident, attached to Rivera's 56(a)2 statement as Exhibit A. ECF No. 23-2.

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### III.   Discussion

I conclude that Mr. Rivera has abandoned the aspects of his claim challenging Officer Trinh's entry and search of his residence. Thus, the only issue remaining is whether Officer Trinh's detention of Mr. Rivera violated his Fourth Amendment rights. Because I conclude based on the undisputed facts that probable cause existed to arrest Mr. Rivera when Officer Trinh detained him—justifying the detention even it constituted a de facto arrest—Officer Trinh is entitled to summary judgment.

### a.   Abandoned Claims

While Mr. Rivera alleges in his complaint that Officer Trinh deprived him of "his right to be free from warrantless entry, search, seizure and arrest, without probable cause," Mr. Rivera's brief opposing Officer Trinh's motion for summary judgment focuses only upon Mr. Rivera's detention in handcuffs, ignoring Officer Trinh's argument that exigent circumstances justified Officer Trinh's entry and search of Mr. Rivera's residence. Mr. Rivera also emphasizes in his 56(a)2 statement that his wife consented to Officer Trinh's request to enter the residence, and he admits that he told officers to retrieve his gun and ammunition from a dresser inside his home. So I conclude that Mr. Rivera has abandoned the aspects of his claim challenging Officer Trinh's entry into and search of his residence. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

      b. **Detention in Handcuffs**

Mr. Rivera alleges in his complaint that he was "seized and arrested without a warrant, without probable cause" in violation of his Fourth Amendment rights. Officer Trinh contends that Mr. Rivera was not arrested. Viewing the facts in the light most favorable to Mr. Rivera, I conclude that a reasonable jury could find that Officer Trinh's detention of Mr. Rivera in handcuffs may have constituted a de facto arrest requiring probable cause, rather than an investigatory stop requiring only reasonable suspicion.

When determining whether an investigative stop has become so intrusive as to become a de facto arrest, courts within the Second Circuit consider various factors including "(1) the length of time involved in the stop; (2) its public or private setting; (3) the number of participating law enforcement officers; (4) the risk of danger presented by the person stopped; and (5) the display or use of physical force against the person stopped, including firearms,

handcuffs, and leg irons." *United States v Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018) (quoting *United States v. Newton*, 369 F.3d 659, 674 (2d Cir. 2004)); *see also Grice v. McVeigh,* 873 F.3d 162, 167 (2d Cir. 2017) (Courts look to "the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.") (quoting *United States v. Perea*, 986 F.3d 633, 644 (2d Cir. 1993)). While none of these factors is determinative, "officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes." *Fiseku*, 915 F.3d at 870 (quoting *Newton*, 369 F.3d at 674).

Relevant to the issue of whether an officer used the least intrusive means reasonably available, the Second Circuit generally views use of handcuffs as a "hallmark of a formal arrest." *Fiseku*, 915 F.3d at 871 (quoting *Newton*, 369 F.3d at 676). Still, a "police officer, 'faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.'" *Grice,* 873 F.3d at 167 (quoting *United States. v. Alexander*, 907 F.2d 269, 272 (2d Cir. 1990)). For this reason, the Second Circuit has held that "[I]n certain unusual circumstances … handcuffing a suspect to investigate a reasonable suspicion does not transform a Terry stop into an arrest." *Grice,* 873 F.3d at 167-168. The "relevant inquiry is whether police have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat." *United States v. Bailey*, 743 F.3d 322, 340 (2d Cir. 2014).

6

On the one hand, many aspects of Mr. Rivera's detention—including its duration, its largely private nature, and the possible risk of danger presented by Mr. Rivera—indicate that it was a reasonable investigative stop rather than a de facto arrest. In considering whether "a detention is too long in duration to be justified as an investigative stop," courts consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Here, during the period that Mr. Rivera was detained, Officer Trinh and his fellow officers located a firearm and ammunition in Mr. Rivera's dresser, conducted a canvass of the neighborhood, and searched the property of 607 Main Street for shell casings. Mr. Rivera was detained for less than half an hour while officers completed this investigation. The duration of the detention and the diligence with which Officer Trinh and his fellow officers pursued their investigation during the detention weigh in favor of a conclusion that it was a reasonable investigatory stop. Similarly, the largely private nature of the detention weighs in favor of a conclusion that the detention was an investigatory stop, and a reasonable one. Because Mr. Rivera was detained inside of and on the porch of his own residence, he was "subjected to 'neither the inconvenience nor the indignity associated with a compelled visit to the police station.'" *Newton*, 369 F.3d at 675 (quoting *Michigan v. Summers*, 452 U.S. 692, 702 (1981)). In addition, at the outset of the encounter, the possible risk of danger Mr. Rivera posed was significant—Officer Trinh had heard from Mr. Rivera's neighbor that Mr. Rivera had used a firearm to fire "blanks" at him only minutes before Officer Trinh arrived on the scene. Based on this report, Officer Trinh could reasonably have thought that Mr. Rivera was carrying a firearm when he first encountered and detained him.

However, viewing the facts in the light most favorable to Mr. Rivera, I conclude that a reasonable jury could find that no unusual circumstances justified the continued use of handcuffs

7

to detain him during Officer Trinh's investigation. Mr. Rivera's initial detention in handcuffs until Officer Trinh located the firearm and ammunition in the dresser was reasonable. *See Newton*, 369 F.3d 659 (placement of defendant in handcuffs inside his home for the few minutes it took officers to search for and locate a firearm did not constitute an arrest). But unlike the officers in *Newton*, Officer Trinh kept Mr. Rivera in handcuffs even after he had located the gun and ammunition. Officer Trinh has not identified any ongoing concern that Mr. Rivera could access a weapon or otherwise posed a risk to the officers or others during much of the period that he was detained. *See Bailey*, 743 F.3d at 340 (handcuffing suspect exceeded reasonable bounds of *Terry* stop because no "present physical threat" existed after police confirmed that suspect was unarmed); *Cf. Grice,* 873 F.3d 162 (handcuffing suspect to ensure he could not press a detonator button on an electronic device while other officers and a bomb-sniffing dog searched nearby train tracks for explosives was a reasonable investigatory stop, not a de facto arrest); *Fiseku*, 915 F.3d 863 (investigatory detention did not ripen into de facto arrest because concerns about the safety of three officers questioning three suspects in remote area late at night persisted throughout the ten minutes the suspects were detained, particularly when one of the officers turned his attention away from the suspects to conduct a search of their vehicle). While Mr. Rivera stated that there were other guns in the home, he told Officer Trinh that they were locked in the attic, and the record contains no suggestion that Officer Trinh was concerned, or had a reasonable basis to believe, that there were other firearms that might be immediately accessible to Mr. Rivera. Further, according to Mr. Rivera's version of the facts, he did not "demonstrate[] unwillingness to cooperate" with Officer Trinh's investigation. *See United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) (use of handcuffs did not transform stop into arrest, in part because suspect fled officers when first approached and continued to struggle with one of the officers

after being stopped). Even Officer Trinh concedes that after some alleged initial resistance to being handcuffed, Mr. Rivera complied. ECF No. 22-2 at ¶ 15. Thus, viewing the facts in the light most favorable to Mr. Rivera, I conclude that a reasonable juror could find that Mr. Rivera's detention ripened into a de facto arrest.

### c. Probable Cause

If Mr. Rivera's detention constituted a de facto arrest rather than an investigatory stop, it violated the Fourth Amendment unless supported by probable cause. *Grice*, 873 F.3d at 167 ("Arrests require probable cause."). While Officer Trinh may have been proceeding on a *Terry*-stop rationale when he detained Mr. Rivera, the presence of probable cause based on the facts available to Officer Trinh at the time of the detention may still justify the detention. *See Florida v. Royer*, 460 U.S. 491, 507 (1983) ("[T]he fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause and hence removing any barrier to relying on Royer's consent to search."). Officer Trinh argues that when he detained Mr. Rivera, probable cause existed to arrest Mr. Rivera for the felony of threatening with a firearm under Connecticut law. ECF No. 22-1 at 8. Where, as here, the parties agree on all the facts relevant to a probable cause determination, "[w]hether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment." *Weinstock v. Wilk*, 296 F. Supp. 2d 241, 246 (D. Conn. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"Under both federal and Connecticut law, probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Zalaski v. City of Hartford*, 723 F.3d 382, 389-390 (2d

9

Cir. 2013). Mr. Rivera does not contend that it would be consonant with Connecticut law for a person to point a firearm at another person and shoot "blanks" from it. *See also* Conn. Gen. Stat. § 53a-61aa ("A person is guilty of [the felony] of threatening in the first degree when such person … (3) commits threatening in the second degree … and in the commission of such offense is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a pistol, revolver, shotgun, rifle machine gun or other firearm."); Conn. Gen. Stat. § 53a-62(a) (A person is guilty of threatening in the second degree when "(1) [b]y physical threat, [a] person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2)(A) such person threatens to commit any crime of violence with the intent to terrorize another person, or (B) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror.")

The issue is thus whether Officer Trinh had "reasonably trustworthy information" demonstrating probable cause to suspect Mr. Rivera had pointed a gun at Mr. Garguilo and fired "blanks" from it. I conclude that he did. The Second Circuit has held that the allegations of victims at the scene of a crime establish probable cause unless there is reason to doubt the veracity of the accusers. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[It] is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raised doubt as to the person's veracity.") (internal quotation marks and citations omitted); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.") (internal citation omitted).

Mr. Rivera has failed to point to any such reason. The following facts are undisputed: At the time that Officer Trinh detained Mr. Rivera, he had been told by Mr. Garguilo that Mr. Rivera had minutes earlier pointed a firearm at Mr. Garguilo and fired "blanks." Ms. Couture had partially corroborated Mr. Garguilo's account, reporting to Officer Trinh that she had heard gunshots coming from the direction of Mr. Rivera's home and observed Mr. Garguilo running from Mr. Rivera's home while claiming that someone had shot at him. Further, Officer Trinh had located Mr. Rivera where Mr. Garguilo and Ms. Couture told Officer Trinh that he would find him (on the first floor of 607 Main Street). While Officer Trinh was able to discover fairly quickly through diligent investigation that what Mr. Garguilo and Ms. Couture told him was false, Mr. Rivera has identified no circumstances within Officer Trinh's knowledge at the time that he detained Mr. Rivera that should have raised doubts regarding the truthfulness of this supposed victim and witness. Thus, based on the undisputed facts, I conclude that Officer Trinh had probable cause to arrest Mr. Rivera at the point when he detained him, rendering the detention reasonable regardless of whether it was an investigatory stop or a de facto arrest.[2] I therefore grant Officer Trinh's motion for summary judgment.

IV.  **Conclusion**

For the reasons set forth above, Officer Trinh's motion for summary judgment (ECF No. 22) is GRANTED.

IT IS SO ORDERED.

---

[2] At a minimum, the undisputed facts recounted above gave Officer Trinh "arguable probable cause" to arrest Mr. Rivera, and thus also warrant summary judgment under the doctrine of qualified immunity. It was objectively reasonable for Office Trinh to believe under the circumstances that probable cause existed. *See Myers v. Patterson*, 819 F.3d 625, 632-33 (2d Cir. 2016).

/s/
Michael P. Shea, U.S.D.J.

Dated:	Hartford, Connecticut
	August 24, 2021